## Lee *vs.* The State of Georgia.

The evidence in this case is not sufficient to show the guilt of the accused beyond a reasonable doubt, and the verdict is contrary to law and evidence.

December 21, 1883.

New Trial. Criminal Law. Before Judge Adams. Chatham Superior Court. March Term, 1883.

Major Lee was indicted for the murder of Elbert Lee. The evidence for the state was, in brief, as follows: On the 14th of December, 1880, the deceased, J. B. Lee, his cousin, and the defendant, a negro boy about sixteen years of age, who was in the employment of the deceased, had gone to Savannah from Bulloch county for the purpose of selling some cotton, and after doing so, were returning home, and camped by the roadside about ten miles from Savannah. J. B. Lee awoke at a time which he supposed to be about day or a little before, but as the moon was shining that night, he could not be positive as to the time. He felt that he was injured, but at the time could not tell how. He saw the defendant standing in about the same position near the camp fire in which he had been when the witness retired. Lee asked him if he had fed the horses, and upon receiving a negative answer, asked him to throw them a bundle of fodder, as he (Lee) was "bad off." He also saw Elbert Lee, and noticed that one of his eyes seemed to be hurt and appeared to have been bleeding, as his clothes were also bloody. The deceased started in the direction of the railroad, which was near by; and J. B. Lee told the defendant to catch him, and not let him go on the rail-

road. The defendant started after him, and J. B. Lee could recollect no more until some time afterwards, when aid arrived and he was carried away. He did not know whether the defendant had retired that night or not. There was an old cover near the fire when he became conscious, as though defendant had dropped it there. He remembered seeing another party encamped a short distance away, variously estimated at from fifteen to thirty yards. He stated that he saw them like shadows, and that they disappeared from his sight. About eight o'clock in the morning, another party passed the scene of the crime, and seeing the wagon standing still, the mules roaming about, and the defendant squatting near the fire, they commented on these facts, and wondered why matters remained in such a condition in the morning. When opposite the camp they stopped, and thereupon the defendant came forward and told them that about an hour after the two Lees and he had laid down on the night previous, he was sleeping, and heard J. B. Lee call to Elbert Lee to help him, but did not wake up until some one stepped over him; that he then woke up and found that Elbert Lee was badly injured; that he saw a large black negro with a bundle in one hand and a crooked stick in the other, who went off towards the railroad, got upon it and hallooed; that he then heard some one talking in that direction. He also said that the injury must have been inflicted with Elbert Lee's axe, as it was bloody, and upon being told that it was not then bloody, he said that he had washed it off. He also stated that the neighboring camp was pitched shortly after this was done; that there was a man, a woman and two boys, and that he did not go over to tell them about it because he was afraid of the woman. He also stated that about daylight a man came by, and he asked which way the latter was going, and was told "up." Also that, after Elbert Lee was hurt, he got up and went to a certain tree and fell beside it; that he (defendant) searched Lee's pockets, knowing that he had

money about him, but found none; that ne found some money upon J. B. Lee, and returned t to him after he became conscious; that he had seen them count their money on the night before; that he washed Elbert Lee's head on the night of the injury. The two Lees were carried to Savannah by the passing wagons, and Elbert died from the effects of his injuries. The physician who examined them stated that the injury to Elbert Lee must have been done with a blunt instrument, such as a stick; and if J. B. Lee had been struck with an axe, it must have been with the side of it. The defendant went with the wagoners to Savannah and returned with them to Bulloch county. Two of them stated that he was quite silent until the return trip, when he became quite talkative, becoming more quiet again upon reaching home. Two of the party who camped near the Lees were sworn, and testified that they encamped there about twelve o'clock at night, and left about daylight the next morning; that when they pitched their camp some one was moving about the camp of the Lees, whom they took to be a negro boy; that there was no passing between the two camps; that during the night they heard some one groaning, but supposing that it was some one who was sick or who had probably been on a spree, they paid no particular attention to it. When they arose the next morning, they saw nobody except the negro boy standing or walking about the fire. J. B. Lee testified that when they lay down that night, the axe was lying " right between the wood."

The jury found the defendant guilty, and recommended him to the extreme mercy of the court. He moved for a new trial on various grounds, among them that the verdict was contrary to law and evidence. The motion was overruled, and he excepted.

R. FALLIGANT, for plaintiff in error.

C. ANDERSON, attorney general; W. G. CHARLTON, solicitor general, for the state.

BLANDFORD, Justice.

The plaintiff in error was indicted for, and found guilty of, murder. He moved for a new trial on many grounds, which was refused by the court, and he prosecutes this writ of error to review and reverse the judgment refusing the new trial prayed for.

It will be necessary to notice but one of the assignments of error in this case, and that is, " the verdict of the jury is contrary to the law and evidence in the case."

" Moral and reasonable certainty is all that can be expected in legal investigation. In all civil cases, the preponderance of testimony is considered sufficient to produce mental conviction. In criminal cases, a greater strength of mental conviction is held necessary to justify a verdict of guilty." Code, §3749. The testimony should be so strong and conclusive as to exclude from the minds of the jury every reasonable doubt as to the guilt of the accused. Applying these principles to the facts in this case, in the first place the weight of the evidence is not sufficient to produce a belief that the accused was guilty of the offence with which he is charged. This amount of testimony is required in a civil case to justify a verdict; but in a criminal case there must be a greater strength of mental conviction to justify a verdict of guilty. The testimony in this case is far from satisfactory. No one can read it and be satisfied that the defendant is guilty, much less can he be satisfied beyond a reasonable doubt. While we hesitate to grant a new trial on this ground, yet our convictions of duty, when the evidence in this case is considered, leave us no alternative but to set aside this verdict and award a new trial.

Judgment reversed.